1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CALIFORNIA BREWING COMPANY, a              No.  2:15-cv-02278-KJM-CMK
     California Corporation,
12
                    Plaintiff,
13                                              ORDER
             v.
14
15   3 DAUGHTERS BREWING LLC, a
     Florida Limited Liability Company, et al.,
16
                    Defendants.
17

18          This action arises from defendant 3 Daughters Brewing, LLC's ("3 Daughters")

19   and defendant LMMML, LLC's ("LM") alleged use of plaintiff California Brewing Company's

20   ("CBC") "Beach Blonde Ale" mark.  Before the court is defendants' motion to dismiss for lack of

21   personal jurisdiction and improper venue or, alternatively, to transfer venue.  ECF No. 10.

22   Plaintiff opposes the motion.  ECF No. 14.  The court submitted the matter as provided by Local

23   Rule 230(g).  As explained below, the court DENIES defendants' motion.

24   I.      BACKGROUND

25          On November 2, 2015, plaintiff filed a complaint, which makes the following

26   allegations.  Compl., ECF No. 1.  Plaintiff CBC is a California corporation with its principal place

27   of business in Anderson, California.  *Id.* ¶ 11.  CBC is engaged in the business of creating,

28   manufacturing, distributing, and marketing handmade craft beer.  *Id.*  In 2007, CBC created a

                                               1

1  recipe for a very pale, American ale style beer, and conceived of the "Beach Blonde Ale" mark to

2  identify the beer.  *Id.* ¶ 14.  CBC applied to register its mark with the U.S. Patent and Trademark

3  Office ("USPTO") on December 23, 2007, and the USPTO granted registration of the mark on

4  October 7, 2008.  *Id.* ¶¶ 15–17, Ex. 2.  CBC has continuously used its mark in connection with

5  the advertisement and sale of its beer products and merchandise since 2007.  *Id.* ¶¶ 14–18.

6  Defendants 3 Daughters and LM are Florida limited liability companies with their

7  principal places of business in St. Petersburg, Florida.  *See id.* ¶¶ 12–13; Harting Aff. ¶¶ 3–10.

8  According to an affidavit submitted by Michael Harting, the CEO of LM, LM is the sole manager

9  of 3 Daughters.  *See* Harting Aff. ¶ 4.  The complaint alleges defendants began selling beer using

10  plaintiff's Beach Blond Ale mark in 2014.  Compl. ¶ 25.  Defendants allegedly have engaged in a

11  marketing campaign promoting the infringing product, and sell the beer nationwide through

12  online retailers, tasting rooms, and retail stores.  *Id.* ¶¶ 25–27.  The complaint alleges defendants'

13  use of the mark is likely to confuse consumers, because defendants' product uses an identical

14  mark to plaintiff's product, both products are beer, and both products are marketed and sold

15  through similar channels.  *Id.* ¶ 33.  The complaint further alleges defendant 3 Daughters filed an

16  application with the USPTO to register the word mark "Beach Blonde Ale" on May 17, 2013, but

17  the USPTO rejected the application on September 5, 2013 based on CBC's existing registration.

18  *Id.* ¶ 39.

19  The complaint asserts claims for false designation of origin and unfair competition

20  under 15 U.S.C. § 1125(a); trademark infringement under 15 U.S.C. § 1114; unfair competition

21  and/or unfair and deceptive practices under the laws of all U.S. states, including California

22  Business & Professions Code section 17200 *et seq.*; trademark infringement under California

23  common law; common law unfair competition; false advertising under California Business &

24  Professions Code section 17500 *et seq.*; and unjust enrichment.  *See id.* ¶ 7.

25  On December 3, 2015, defendants moved to dismiss the complaint for lack of

26  personal jurisdiction and improper venue or, alternatively, to transfer venue.  ECF No. 10

27  ("Mot.").  As noted, plaintiff opposes the motion, ECF No. 14 ("Opp'n"), and defendants replied,

28  ECF No. 18 ("Reply").

2

1    II.        LEGAL STANDARD

2              A.        Rule 12(b)(2) Lack of Personal Jurisdiction

3                        A defendant may move to dismiss a complaint for lack of personal jurisdiction.

4    Fed. R. Civ. P. 12(b)(2).  Even though the defendant makes a motion under Rule 12(b)(2), it is the

5    plaintiff's burden to establish the court's personal jurisdiction.  *See Sher v. Johnson*, 911 F.2d

6    1357, 1361 (9th Cir. 1990).  When, as here, the court acts without holding an evidentiary hearing,

7    "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion

8    to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  In other words, "the plaintiff

9    need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.*  The

10   plaintiff may not rely on "bare allegations" alone, *Schwarzenegger v. Fred Martin Motor Co.*,

11   374 F.3d 797, 800 (9th Cir. 2004), but the court assumes the complaint's allegations are true

12   unless "directly contravened" by other evidence, *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &*

13   *Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  Any factual conflicts contained in the

14   parties' affidavits are resolved in the plaintiff's favor.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922

15   (9th Cir. 2001) (per curiam).

16             B.        Rule 12(b)(3) Improper Venue

17                       Under Rule 12(b)(3), a defendant may move to dismiss a complaint for improper

18   venue.  Fed. R. Civ. P. 12(b)(3).  Once the defendant has challenged the propriety of venue in a

19   given court, the plaintiff bears the burden of showing that venue is proper.  *See Piedmont Label*

20   *Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  In assessing a motion to

21   dismiss for improper venue, a court may consider facts outside of the pleadings, but must draw all

22   reasonable inferences and resolve all factual conflicts in favor of the non-moving party.  *Murphy*

23   *v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).  If the court determines that venue

24   is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer

25   the case to a district or division in which it could have been brought.  28 U.S.C. § 1406(a); *see*

26   *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

27   /////

28   /////

3

1    III.    DISCUSSION

2            A.    Personal Jurisdiction

3            When no federal statute governing personal jurisdiction applies, the district court

4    applies the law of the state in which it sits, here California.  *Schwarzenegger*, 374 F.3d at 800

5    (citing Fed. R. Civ. P. 4(k)(1)(A)).  "Because California's long-arm statute allows the exercise of

6    personal jurisdiction to the full extent permissible under the U.S. Constitution, our inquiry centers

7    on whether exercising jurisdiction comports with due process."  *Picot v. Weston*, 780 F.3d 1206,

8    1211–12 (9th Cir. 2015) (internal quotation marks and citation omitted; citing Cal. Civ. Proc.

9    Code § 410.10).  Federal due process requires some "minimum contacts" between the defendant

10   and the relevant forum so that the court's exercise of personal jurisdiction "does not offend

11   traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S.

12   310, 316 (1945) (internal quotation marks and citations omitted).

13           There are two forms that personal jurisdiction may take: general and specific.

14   *Picot*, 780 F.3d at 1211.  CBC does not contend defendants are subject to general jurisdiction in

15   California, and instead argues specific jurisdiction exists.  *See* Opp'n at 1.  The test for specific

16   personal jurisdiction has three parts: first, the plaintiff must show the defendant purposefully

17   directed its activities at residents of the forum or purposefully availed itself of the privilege of

18   doing business in the forum state; second, the plaintiff must show its claim arises out of or is

19   related to the forum-related activities; and third, if the plaintiff satisfies the first two prongs, the

20   burden shifts to the defendant to present a "compelling case" that the exercise of personal

21   jurisdiction would be unreasonable or unfair.  *Picot*, 780 F.3d at 1211–12 (quoting

22   *Schwarzenegger*, 374 F.3d at 802; citations omitted).

23           1.    Purposeful Direction

24           The first prong of the specific jurisdiction test refers to both purposeful direction

25   and purposeful availment, in the disjunctive.  In cases sounding in tort, the Ninth Circuit typically

26   employs a purposeful direction analysis.  *Id.* at 1212 (citing *Schwarzenegger*, 374 F.3d at 802–

27   03); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (employing

28   purposeful direction analysis in action for copyright infringement).  Because trademark

4

1   infringement involves tortious conduct, the court here addresses only purposeful direction,

2   without reaching purposeful availment.  Purposeful direction is evaluated under the three-part

3   "effects" test established in *Calder v. Jones*, 465 U.S. 783 (1984), which requires a plaintiff to

4   show the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

5   causing harm that the defendant knows is likely to be suffered in the forum state."  *Picot*, 780

6   F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 803).  "The inquiry whether a forum State

7   may assert specific jurisdiction over a nonresident defendant focuses on the relationship among

8   the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. ___, 134 S. Ct. 1115,

9   1121 (2014) (internal quotation marks and citation omitted).

10                          a)      Intentional Act

11             In the context of the *Calder* effects test, "intent" means "an intent to perform an

12   actual, physical act in the real world, rather than an intent to accomplish a result or consequence

13   of that act."  *Schwarzenegger*, 374 F.3d at 806.  CBC alleges defendants market and sell beer

14   products that infringe CBC's Beach Blonde Ale trademark.  Compl. ¶¶ 22–33, 38, 58–59.  This is

15   a sufficient allegation of an intentional act within the meaning of the *Calder* test.  *See Wash. Shoe*

16   *Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) (purchasing and selling boots

17   that allegedly infringed plaintiff's copyrighted design constituted "intentional acts" under *Calder*

18   test).

19                          b)      Express Aiming

20             The second prong of the purposeful direction inquiry is whether the defendant

21   expressly aimed its act at the forum state.  *Picot*, 780 F.3d at 1214.  "The 'express aiming'

22   analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at

23   issue."  *Schwarzenegger*, 374 F.3d at 807.  In intellectual property cases, "the Ninth Circuit has

24   held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-

25   state defendant and alleges that defendant intentionally infringed its intellectual property rights

26   knowing [the plaintiff] was located in the forum state."  *Amini Innovation Corp. v. JS Imps., Inc.*,

27   497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007) (citing *Columbia Pictures Television v. Krypton*

28   *Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), *reversed on other grounds by Feltner*

1    *v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), and *Panavision Int'l, L.P. v. Toeppen*,

2    141 F.3d 1316, 1321 (9th Cir. 1998); collecting subsequent cases); *see also Wash. Shoe Co.*, 704

3    F.3d at 675–76; *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 961 (N.D. Cal.

4    2015). Courts often refer to this theory of specific jurisdiction as "individualized targeting" of the

5    plaintiff. *See, e.g.*, *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir.

6    2010).

7        Here, CBC alleges defendants intentionally infringed its Beach Blonde Ale mark

8    with knowledge of CBC's ownership of the mark and with knowledge CBC is located in

9    California. *See, e.g.*, Opp'n at 5–6; Compl. ¶¶ 24, 39, 62. CBC alleges the USPTO rejected

10   defendants' application to register marks in 2013 because the marks were confusingly similar or

11   identical to CBC's existing registered trademark, and the USPTO informed defendants of CBC's

12   superior rights. Compl. ¶ 39; Goschke Decl. ¶ 6. In addition, plaintiff's CEO, Jack Goschke,

13   contacted defendants in March 2015 to inform defendants of CBC's rights and to ask defendants

14   to stop using the mark. *See* Goschke Decl. ¶ 8; Harting Decl. ¶ 27. CBC contends defendants

15   had knowledge of plaintiff's residence in the forum state because plaintiff's trademark

16   registration identifies CBC as a resident of California and of this district. Opp'n at 5. The court

17   notes plaintiff's name—California Brewing Company—also signals it is a resident of California.

18   Defendants have not offered any evidence contradicting these allegations and have not denied

19   knowledge of plaintiff's mark registration or location. Mr. Harting's declaration admits

20   defendants were aware of CBC's trademark registration and investigated the registration after Mr.

21   Goschke contacted defendants. Harting Decl. ¶ 27.

22        CBC alleges defendants have used plaintiff's mark for the purpose of promoting

23   defendants' business and attracting new business in competition with plaintiff. For example,

24   CBC avers defendants use metatags and search engine optimization to attract consumers

25   searching for "Beach Blonde Ale" to their website and social media pages, and use "Beach

26   Blonde Ale" branding throughout their website and social media posts. Goschke Decl. ¶¶ 12, 14,

27   16, 20. Because plaintiff and defendants each sell beer using the name "Beach Blonde Ale," with

28   CBC's use allegedly beginning first in time, it is plausible defendants divert consumers searching

1  for plaintiff's product to defendants' web pages to profit from the goodwill and recognition

2  associated with the Beach Blonde Ale mark.  In addition, CBC has submitted evidence defendants

3  sell their product to consumers in California through national retailers and market to California

4  consumers through social media, Wilks Decl. ¶¶ 2–3; Gillette Decl. ¶¶ 2–3; Liedtke Decl. ¶¶ 2–9;

5  Goschke Decl. ¶¶ 16–20, 28–29; defendants' website states they ship their beer nationwide,

6  Goschke Decl. ¶ 21; and defendants' CEO has said defendants want to grow significantly, *id.*

7  ¶ 22.  The court finds these allegations of individualized targeting with knowledge of plaintiff's

8  location sufficient to establish express aiming under Ninth Circuit precedent.  *See, e.g.*, *Wash.*

9  *Shoe Co.*, 704 F.3d at 675–79.

10        In their reply brief, defendants argue these allegations cannot form the basis of the

11  court's jurisdiction after the Supreme Court's recent decision in *Walden v. Fiore*, 571 U.S. ___,

12  134 S. Ct. 1115 (2014).  Reply at 3–4, 6–9.  In *Walden*, the plaintiffs alleged an agent of the Drug

13  Enforcement Administration (DEA) violated their Fourth Amendment rights by seizing cash from

14  them at a Georgia airport on their return trip to their Nevada residence.  134 S. Ct. at 1119–20.

15  The Court held the fact the agent knew a delay in returning the funds would affect persons with

16  connections to Nevada was not sufficient to establish specific jurisdiction over the agent in

17  Nevada.  *Id.* at 1124–25.  The Court emphasized the specific jurisdiction inquiry must focus on

18  the relationship between the defendant's conduct and the forum state, and "a defendant's

19  relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."

20  *Id.* at 1122–23; *accord Picot*, 780 F.3d at 1214.  To illustrate these principles, the Court

21  distinguished *Calder*, explaining:

> The crux of *Calder* was that the reputation-based "effects" of the
> alleged libel connected the defendants to California, not just to the
> plaintiff.  The strength of that connection was largely a function of
> the nature of the libel tort.  However scandalous a newspaper article
> might be, it can lead to a loss of reputation only if communicated to
> (and read and understood by) third persons.

26  *Walden*, 134 S. Ct. at 1123–24.  In *Walden*, by contrast, the Court found a DEA agent's alleged

27  tortious conduct of seizing cash from the plaintiffs at an airport in Georgia in no way connected

28  the agent to Nevada.  *See id.*

1    The instant action is more analogous to *Calder* than to *Walden*, because the nature

2    of defendants' alleged tortious conduct connects defendants to California.  *Cf. Schwarzenegger*,

3    374 F.3d at 807 ("The 'express aiming' analysis depends, to a significant degree, on the specific

4    type of tort or other wrongful conduct at issue.").  Just as publication to third persons is a

5    necessary element of libel, likelihood of consumer confusion is a necessary element of trademark

6    infringement.  *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602

7    (9th Cir. 2005).  Specific jurisdiction over 3 Daughters and LM is not based on "random,

8    fortuitous, or attenuated" contacts defendants made with CBC, *Walden*, 134 S. Ct. at 1123

9    (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), but rather on defendants'

10   alleged conduct in marketing and selling an infringing product to California consumers with an

11   alleged intent to directly compete with CBC.  Accordingly, exercising personal jurisdiction over

12   defendants in this action is not inconsistent with *Walden*.  *Cf. Tresona Multimedia LLC v. Legg*,

13   No. 14-02141, 2015 WL 470228, at *4 (D. Ariz. Feb. 4, 2015) ("The central lesson of *Walden* is

14   that . . . jurisdiction must be based on a defendant's contacts with the forum.  Case law has

15   established that certain actions by an out-of-state defendant—such as . . . directly competing with

16   a person (*Brayton*)—create contacts with that person's forum.").

17   Moreover, the court is not persuaded by defendants' argument that acts by third

18   party retailers are irrelevant to the analysis.  Although standalone acts by third parties cannot

19   establish specific jurisdiction, *see Walden*, 134 S. Ct. at 1123, here, there is evidence defendants

20   sold their goods to national retailers with the intent to develop a national market, *see, e.g.*,

21   Goschke Decl. ¶¶ 21–23.  If such allegations are true, it would not be reasonable for defendants to

22   disclaim any connection to sales in California.  *Cf. Seirus Innovative Accessories, Inc. v.

23   Cabela's, Inc.*, No. 09-102, 2009 WL 9141752, at *3 (S.D. Cal. Nov. 2, 2009) (defendant who

24   sold products through a national retailer should have reasonably expected sales in state where

25   retailer marketed products); *Hilsinger Co. v. FBW Investments*, 109 F. Supp. 3d 409, 426 (D.

26   Mass. 2015).  Otherwise, defendants could avoid jurisdiction in a forum simply by acting through

27   a third party and pleading ignorance.

28

8

1    At this stage of the proceedings, the court finds plaintiff has satisfied express

2  aiming.

3                    c)        Foreseeable Harm

4    With respect to the third part of the *Calder* test, the court finds plaintiff's

5  allegations sufficient to establish defendants knew the resulting harm would be suffered in

6  California.  Here, it was foreseeable that plaintiff would be harmed by infringement of its Beach

7  Blonde Ale mark, and that some of the harm would occur in California, where defendants knew

8  CBC resided at least as early as March 2015, Harting Decl. ¶ 27, and likely as early as September

9  2013, Compl. ¶ 39; Goschke Decl. ¶ 6.  *See Brayton*, 606 F.3d at 1131.  As discussed above, Mr.

10  Harting admits plaintiff contacted him and asked him to stop using its Beach Blonde Ale mark in

11  March 2015, and he subsequently investigated plaintiff's use and registration of the mark.

12  Harting Decl. ¶ 27.  In addition, plaintiff alleges the USPTO rejected defendants' application to

13  register the word mark "Beach Blonde Ale" on or about September 5, 2013, in light of plaintiff's

14  existing mark registration, and CBC's registration identifies it as a resident of this district.

15  Compl. ¶ 39; Goschke Decl. ¶¶ 6, 10.  Defendants have not submitted any evidence suggesting it

16  was not foreseeable that harm would be suffered in California.

17    The court finds plaintiff has established purposeful direction under the *Calder* test.

18                    2.        The "But For" Test

19    The second prong of the test for specific personal jurisdiction focuses on the

20  connection between the defendant's acts and the harm those acts caused.  It requires the plaintiff

21  to show the claim would not have arisen but for the defendant's contacts with the forum state.

22  *Ballard*, 65 F.3d at 1500.  Other decisions have articulated the test as requiring a "direct nexus"

23  between the defendant's contacts with the forum and the cause of action.  *Fireman's Fund Ins.*

24  *Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996).

25    Despite its apparently strict language, many district courts in the Ninth Circuit

26  have not applied the "but for" test stringently.  *See, e.g.*, *Planned Parenthood v. Am. Coalition of*

27  *Life Activists*, 945 F. Supp. 1355, 1368 (D. Or. 1996) ("The 'but for' test should not be narrowly

28  applied; rather, the requirement is merely designed to confirm that there is some nexus between

9

1    the cause of action and defendant's contact with the forum." (citing *Shute v. Carnival Cruise*
2    *Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *reversed on other grounds*, 499 U.S. 585 (1991))).

3               Whether a stricter or more lenient interpretation of *Ballard*'s "but for" test is
4    appropriate, defendants' alleged contacts satisfy both versions.  As stated above, this action arises
5    from defendants' alleged individualized targeting of plaintiff and use of plaintiff's mark in
6    advertising, marketing, and sales reaching California consumers.  Plaintiff's injury would not
7    have occurred but for defendants' contacts with California, where plaintiff's principal place of
8    business is located, Compl. ¶ 11.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021
9    (9th Cir. 2002).  Defendants' motion addresses only purposeful direction, the first prong of the
10   specific jurisdiction test, effectively conceding the second.  The court finds the second prong is
11   satisfied.

12              3.     <u>Reasonableness</u>

13              Because plaintiff has established defendants' contacts were purposefully directed
14   at California and caused the alleged injuries, the burden shifts to defendants to present a
15   "compelling case" of the unreasonableness of personal jurisdiction over it.  *See Schwarzenegger*,
16   374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–48).  In assessing the overall
17   reasonableness and fairness of exercising personal jurisdiction, the court considers, among other
18   things,

19            (1) the extent of a defendant's purposeful interjection; (2) the
20            burden on the defendant in defending in the forum; (3) the extent of
              conflict with the sovereignty of the defendant's state; (4) the forum
21            state's interest in adjudicating the dispute; (5) the most efficient
              judicial resolution of the controversy; (6) the importance of the
22            forum to the plaintiff's interest in convenient and effective relief;
              and (7) the existence of an alternative forum.

23   *Panavision*, 141 F.3d at 1323 (citing *Burger King*, 471 U.S. at 476–77)).

24              Here, as well, defendants' motion does not address the reasonableness prong.
25   Accordingly, defendants have not met their burden of presenting a "compelling case" of the
26   unreasonableness of this court's exercising personal jurisdiction over them.

27              Plaintiff has made a sufficient showing of jurisdictional facts to withstand
28   defendants' motion to dismiss.  Defendants' motion to dismiss is DENIED.

1    B.    Venue

2         A district court may dismiss or transfer a case "to any district or division in which

3    it could have been brought" if venue is "wrong."  28 U.S.C. § 1406(a).  Venue over trademark

4    and UCL claims is governed by the general venue statute.  *See Adobe*, 125 F. Supp. 3d at 959.

5    The general venue statute provides in relevant part, "A civil action may be brought in . . . a

6    judicial district in which any defendant resides, if all defendants are residents of the State in

7    which the district is located."  28 U.S.C. § 1391(b)(1).  Section 1391 also provides that "an entity

8    with the capacity to sue and be sued in its common name under applicable law . . . shall be

9    deemed to reside . . . in any judicial district in which such defendant is subject to the court's

10   personal jurisdiction with respect to the civil action in question . . . ."  *Id.* § 1391(c).  Here, the

11   court has found defendants are subject to the court's personal jurisdiction with respect to this

12   action, so defendants are both deemed to "reside" in this district.  *See id.*  Accordingly, venue in

13   this district is proper under § 1391(b)(1).

14        Moreover, § 1391 also allows a civil action to be brought in "a judicial district in

15   which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28

16   U.S.C. § 1391(b)(2).  In trademark cases, infringement takes place in any district in which

17   consumers are likely to be confused by the challenged goods.  *See E & J Gallo Winery v.*

18   *Grenade Beverage LLC*, No. 1:13-00770, 2013 WL 6048140, at *4 (E.D. Cal. Nov. 14, 2013);

19   *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).  Here, the

20   complaint alleges a likelihood of consumer confusion in this district, where plaintiff is based, as a

21   result of defendants' sales, marketing, and advertising to California consumers.  The court finds

22   plaintiff has sufficiently alleged a substantial part of the events giving rise to the claim occurred

23   in this district.  Because venue is proper in this district under both 28 U.S.C. §§ 1391(b)(1) and

24   (b)(2), the court DENIES defendants' motion to dismiss the case under 28 U.S.C. § 1406(a).

25   C.    Transfer

26        Alternatively, defendant moves to transfer venue under 28 U.S.C. § 1404.  When

27   the district court finds venue is proper, it may still exercise discretion, "[f]or the convenience of

28   parties and witnesses, [and] in the interest of justice," to transfer an action "to any other district

1    where it might have been brought." 28 U.S.C. § 1404(a).  The Ninth Circuit has set out the

2    following non-exclusive list of factors to consider in adjudicating a motion to transfer: "(1) the

3    location where the relevant agreements were negotiated and executed, (2) the state that is most

4    familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'

5    contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

6    forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of

7    compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of

8    access to sources of proof," (9) "the presence of a forum selection clause," if any, and (10) "the

9    relevant public policy of the forum state," if any.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495,

10   498–99 (9th Cir. 2000).  The Ninth Circuit requires the defendant to make a "strong showing" of

11   inconvenience to overcome the preference traditionally accorded a plaintiff's choice of forum.

12   *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

13          Here, defendants' motion does not address the *Jones* factors or provide any

14   reasons explaining why transfer to the Middle District of Florida would be more convenient or in

15   the interests of justice.  *See* ECF No. 10-1 at 4 n.1.  Accordingly, defendants have not met their

16   burden of showing transfer is appropriate.  *See Decker Coal*, 805 F.2d at 843.  Defendants'

17   motion to transfer venue under 28 U.S.C. § 1404(a) is DENIED.

18   IV.    CONCLUSION

19          For the foregoing reasons, defendants' motion to dismiss or to transfer venue is

20   DENIED.

21          IT IS SO ORDERED.

22    DATED:  April 18, 2016.

23

24                                              _____

25                                              UNITED STATES DISTRICT JUDGE

26

27

28

                                                12